1

2

3

4

5

6

7                                  UNITED STATES DISTRICT COURT

8                          FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10    MARY A. HURTADO,                              No.  2:13-cv-891-EFB

11                     Plaintiff,

12          v.                                      ORDER

13    CAROLYN W. COLVIN, Acting
      Commissioner of Social Security,
14
                       Defendant.
15

16

17          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18    ("Commissioner") denying her application for a period of disability and Disability Insurance

19    Benefits ("DIB") under Title II of the Social Security Act.  The parties' cross-motions for

20    summary judgment are pending.  For the reasons discussed below, plaintiff's motion is denied

21    and defendant's motion is granted.

22    I.    BACKGROUND

23          Plaintiff filed an application for a period of disability and DIB on June 25, 2010, alleging

24    that she has been disabled since September 9, 2006.  Administrative Record ("AR") 150-156.

25    Plaintiff's application was denied initially and upon reconsideration.  *Id.* at 69-80.  On December

26    19, 2011, a hearing was held before administrative law judge ("ALJ") Daniel Heely.  *Id.* at 9-44.

27    Plaintiff, who was represented by counsel, testified as did a vocational expert ("VE") testified.

28    *Id.*

                                                   1

On January 27, 2012, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[1]  *Id.* at 48-53.  The ALJ made the following specific findings:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2011.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 9, 2009 through her date last insured of June 30, 2011 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: Hepatitis, status-post partial pancreatectomy, right dominant upper extremity pain (status-post carpal tunnel surgery) (20 CFR 404.1520(c)).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

    * * *

5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b).

    * * *

6.  Through the date last insured, the claimant was capable of performing past relevant work as a mail sorter.  This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

    * * *

7.  The claimant was not under a disability, as defined in the Social Security Act, at any time from September 9, 2009, the alleged onset date, through June 30, 2011, the date last insured (20 CFR 404.1520(f)).

*Id.* at 50-53.

Plaintiff requested Appeals Council review of the ALJ's decision, which was denied on March 8, 2013, leaving the ALJ's decision as the final decision of the Commissioner.  *Id.* at 1-7.

II.   LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a

1    conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.*

2    *N.L.R.B.*, 305 U.S. 197, 229 (1938)).

3        "The ALJ is responsible for determining credibility, resolving conflicts in medical

4    testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

5    2001) (citations omitted). "Where the evidence is susceptible to more than one rational

6    interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

7    *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

8    III.    ANALYSIS

9        Plaintiff argues that the ALJ erred by (1) failing to provide legally sufficient reasons for

10   rejecting the opinion of his treating physician, and (2) failing to provide clear and convincing

11   reasons for rejecting her testimony.

12       A.   The ALJ Provided Legally Sufficient Reasons for Rejecting Plaintiff's Treating

13            Physician's Opinion

14       Plaintiff first argues that the ALJ erred in rejecting the treating opinion of Dr. De Guzman

15   without legitimate reasons. ECF No. 17 at 15. To evaluate whether an ALJ properly rejected a

16   medical opinion, in addition to considering its source, the court considers whether (1)

17   contradictory opinions are in the record; and (2) clinical findings support the opinions. The

18   weight given to medical opinions depends in part on whether they are proffered by treating,

19   examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

20   Ordinarily, more weight is given to the opinion of a treating professional, who has a greater

21   opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d

22   1273, 1295 (9th Cir. 1996). An ALJ may reject an uncontradicted opinion of a treating or

23   examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831.

24   In contrast, a contradicted opinion of a treating or examining professional may be rejected for

25   "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a

26   treating professional's opinion generally is accorded superior weight, if it is contradicted by a

27   supported examining professional's opinion (*e.g.,* supported by different independent clinical

28   findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.

1    1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  However, "[w]hen an

2    examining physician relies on the same clinical findings as a treating physician, but differs only

3    in his or her conclusions, the conclusions of the examining physician are not 'substantial

4    evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

5            Plaintiff's treating physician, Dr. De Guzman, began treating plaintiff on January 25,

6    2008.  AR 574.  On December 14, 2010, Dr. De Guzman completed a physical medical report.

7    *Id*. at 574-579.  He diagnosed plaintiff with pancreatic and abdominal pain.  *Id*. at 574, 576.  He

8    found that plaintiff's condition was stable while on medication and that she experienced fatigue

9    on exertion and weakness in her right hand.  *Id*. at 576-578.  It was Dr. De Guzman's opinion that

10   plaintiff could never lift or carry a weight of less than 10 pounds; could sit for 2 hours in an 8-

11   hour workday and stand and walk for 1 hour in an 8-hour workday; could never use her right

12   hand for grasping or fine manipulation; and never climb, balance, stoop, crouch, kneel, or crawl.

13   *Id*. at 575-577.  He also opined that plaintiff could never reach, handle, or push or pull, but could

14   occasionally feel.  *Id*. at 577.  He also found that plaintiff must avoid all exposure to heights,

15   moving machinery, chemicals, noise, humidity, dust, temperature extremes, fumes, and

16   vibrations.  *Id*. at 578.  Dr. De Guzman completed another physical medical report on October 7,

17   2011, which assessed the same function limitations.  *Id*. at 612-617.

18           The record also contains a physical residual functional capacity assessment completed by

19   Dr. Jansen, a non-examining physician.  *Id*. at 547-552.  Dr. Jansen opined that plaintiff could lift

20   20 pounds occasionally and 10 pounds frequently; sit, stand, and walk for six hours in an 8-hour

21   workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl.  *Id*. at 549-552.

22           In determining plaintiff's RFC, the ALJ gave substantial weight to the opinion of Dr.

23   Jansen while giving minimal weight to that of Dr. De Guzman.  *Id*. at 52.  Because Dr. De

24   Guzman's medical opinion was contradicted by Dr. Jansen's, the ALJ was required to give

25   specific and legitimate reasons for discounting the treating opinion.

26           The ALJ provided two reasons for discounting the weight of Dr. De Guzman's opinion.

27   First, the ALJ found that Dr. De Guzman's opinion was not supported by his own treatment

28   records or other medical evidence.  *Id*. at 52.  This is an appropriate consideration and, as

1  discussed below, is supported by the record.  An ALJ is not required to accept a treating

2  physician's opinion that is conclusory, brief, and unsupported by the record as a whole or by

3  objective medical findings.  *Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004);

4  *see also* Social Security Ruling 96–2p FN3 (noting it would be "error to give an opinion

5  controlling weight simply because it is the opinion of a treating source if it is not well-supported

6  . . . or if it is inconsistent with the other substantial evidence").  Further, an inconsistency in a

7  doctor's opinions, observations, and clinical notes "is a clear and convincing reason for not

8  relying on the doctor's opinion" regarding the claimant's abilities or limitations.  *Bayliss v.*

9  *Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir.

10  1995); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (holding that ALJ may

11  reject a treating physician's opinion that is inconsistent with treatment reports).

12  Treatment notes from 2008 show that plaintiff experienced abdominal pain that was "not

13  really controlled."  AR 475-478.  She had full range of motion in her extremities, with no

14  cyanosis or edema, her gait was normal, and there was no focal weakness, loss of sensation or

15  incoordination.  *Id*.  Records from 2009 consistently noted reports of abdominal pain, which were

16  treated with pain medication.  475-488.   There were no neurological complaints or problems with

17  her extremities.  *Id*.  Similar findings are contained in treatment notes from early 2010.  *Id*. at

18  489-496.

19  Treatment notes from an exam conducted on August 6, 2010, show that plaintiff reported

20  pain from a surgical scar, as well as abdominal pain.  AR 565.  However, she was "[o]n pain

21  meds with stable control."  *Id*.  She experienced no nausea, vomiting, diarrhea, or constipation.

22  Plaintiff did not appear to be in any distress, had good color, and was alert and cooperative.  *Id* at

23  566.  Plaintiff had full range of motion in her extremities, with no cynosis or edema, her gain was

24  normal, and there was no focal weakness, loss of sensation, or incoordination.  *Id*.  Treatment

25  notes from August 31, 2010, and November 8, 2010 showed similar findings.  *Id*. at 569-570.

26  December 14, 2010 treatment notes indicated that plaintiff experienced generalized weakness in

27  her legs, arms, and right hand.  *Id*. at 571.   Plaintiff's gait was normal and she had full range of

28  motion in all extremities, although she experienced pain on range of motion in her lower

1   extremities and right wrist. *Id*. While not fully explained, treatment notes from 2008, 2009, 2010

2   consistently report that plaintiff is employed full-time and exercising more than three times a

3   week. *Id*. at 475-500; 529-536.

4        Although Dr. De Guzman's treatment notes show some level of abdominal pain, they

5   simply do not support the extreme limitations he assessed, which included the inability to lift any

6   weight, or to reach, push, pull, and balance, or to stand/walk for more than one hour, or sit for

7   more than 2 hours. In contradiction of that conclusory assessment, recent treatment notes

8   consistently showed that plaintiff's pain was stable with medications. Similarly, with the

9   exception of the note in December 2010, Dr. De Guzman's consistently found that plaintiff had

10  no reported problems with her extremities. Given the severity of limitations summarized by Dr.

11  De Guzman which stood in marked contrast to the actual treating record, the ALJ permissibly

12  concluded that his opinion was inconsistent with his own treatment notes.

13       The ALJ also discredited Dr. De Guzman's opinion because it appeared that he

14  "endorse[d] all of the claimant's complaints and allegations without providing reference to

15  clinical observations or medical findings." *Id*. at 52. The opinion of a treating physician may be

16  rejected where it is premised primarily on plaintiff's subjective complaints and the ALJ properly

17  discounted plaintiff's credibility. *Tonapetyan*, 242 F.3d at 1149. Plaintiff contends that there is

18  no foundation for the ALJ finding that Dr. De Guzman endorsed plaintiff's subjective complaints

19  without reference to clinical observations. ECF No. 17 at 13. Dr. De Guzman primarily

20  supported his assessed limitations by stating that plaintiff experienced fatigue on exertion and

21  chronic pain. AR 575-578. However, as previously discussed, Dr. De Guzman's own treatment

22  records generally found no impairments to plaintiff's extremities, and while plaintiff certainly did

23  experience chronic pain, he noted that it was stable with medication. The record also shows that

24  plaintiff testified that she experienced fatigue and pain and reported that she can perform only

25  minimal activities around her house. *Id*. at 31-32. In light of plaintiff's testimony and the

26  minimal objective findings in Dr. De Guzman's note, the ALJ was permitted to infer that Dr. De

27  Guzman relied heavily on plaintiff's subjective statements. *Marci v. Chater*, 93 F.3d 540, 543

28  (9th Cir. 1996) ("[T]he ALJ is entitled to draw inferences logically flowing from the evidence.").

1    Furthermore, as discussed below, the ALJ properly discounted plaintiff's credibility as to her

2    limitations.  Accordingly, the ALJ properly rejected Dr. De Guzman's opinion based on his

3    reliance on plaintiff's subjective complaints.

4         B.  The ALJ Provided Legally Sufficient Reasons for Discrediting Plaintiff's Testimony

5              Plaintiff next argues that the ALJ erred in finding that she was not credible.  ECF No. 17

6    at 17.  In evaluating whether subjective complaints are credible, the ALJ should first consider

7    objective medical evidence and then consider other factors.  *Bunnell v. Sullivan*, 947 F.2d 341,

8    344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of impairment, the ALJ then

9    may consider the nature of the symptoms alleged, including aggravating factors, medication,

10   treatment and functional restrictions.  *See id*. at 345–47.  The ALJ also may consider: (1) the

11   applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

12   testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

13   prescribed course of treatment, and (3) the applicant's daily activities.  *Smolen v. Chater*, 80 F.3d

14   1273, 1284 (9th Cir. 1996).  Work records, physician and third party testimony about nature,

15   severity and effect of symptoms, and inconsistencies between testimony and conduct also may be

16   relevant.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek

17   treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ

18   in determining whether the alleged associated pain is not a significant, nonexertional impairment.

19   *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part,

20   on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir.

21   1989), but those observations cannot substitute for medical diagnosis.  *Marcia v. Sullivan*, 900

22   F.2d 172, 177 n. 6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is

23   malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and

24   convincing."  *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999).

25              In the instant case, plaintiff testified she was unable to work due to chronic excruciating

26   abdominal, wrist, and leg pain.  AR 14-15, 36.  She claimed that she had not worked since 2009

27   when she began getting sick.  *Id*. at 13.  Plaintiff also testified that her hepatitis and medications

28   make her extremely fatigued.  *Id*. at 16, 24.  She stated that the pain is so severe she will wake up

8

crying because of it, and she has to take medication to make it go away.  *Id.* at 32.  She also stated

that because of her pain she is extremely physically limited and does little during the day.  AR 21-

23.  When asked about her daily activities, plaintiff stated that she does some light cooking,

laundry, driving, goes out to dinner, drives to the market, and takes her granddaughter to the

library.  *Id.*at 21-23.  She also testified that her grip, reach, and extension capabilities of her right

extremities have been severely limited.  *Id.* at 36.

In his decision, the ALJ gave two reasons for discrediting plaintiff's testimony: 1)

plaintiff's alleged limitations were not supported by the objective medical evidence to the extent

claimed; 2) plaintiff's allegations of disabling impairments were inconsistent with her reported

activities of daily living.  AR 51.

The ALJ specifically found that "[t]he medical treatment records do not reveal much

about functional limitations and suggest that the claimant is not fully credible in her work

activities."  The ALJ provided the following summary of the medical evidence:

> On August 6, 2010 she reported full time employment but provided
> no specific information.  A treatment record from January 2011
> noted laparoscopic repair of multiple incarcerated ventral incisional
> hernias.  An abdominal ultrasound on May 17, 2011 showed
> hepatic stenosis or underlying hepatic dysfunction, with mild
> dilation of the intrahepatic biliary tree with common bile duct
> measuring 4 mm.  A later CT scan showed mild osteopenia with
> minimal anterolisthesis of L4 on L5 with bilateral facet sclerosis.
> However, nothing in the medical record contains findings or
> suggestions by the claimant's examining and treating doctors
> consistent with the severity, frequency, and intensity of limitations
> as she alleges.  A November 14, 2011 x-ray showed mild
> osteopenia with mild degenerative changes at the right hip joint.
> The doctor noted that the claimant reported " . . . right hip pain that
> is chronic but she never mentioned in the past."  A December 7,
> 2011 x-ray showed moderate degenerative arthritic changes at the
> base of the thumb metacarpal right hand, and evidence of status
> post carpal tunnel surgery.

AR 52.

Plaintiff argues that the lack of medical evidence is not a sufficient basis for discrediting

plaintiff's testimony because, under Ninth Circuit precedent, an adverse credibility finding cannot

be premised wholly on a lack of medical evidence supporting the allegations of pain.  ECF No. 17

at 18.  *See Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (1997) ("[A] finding that the claimant

1    lacks credibility cannot be premised wholly on a lack of medical support for the severity of his

2    pain."). The ALJ, however, did not rely solely on a lack of objective medical evidence in

3    discounting plaintiff's credibility.[2]

4          The ALJ also relied on inconsistent statements regarding plaintiff's daily activities in

5    assessing plaintiff's testimony. Plaintiff, however, argues that the ALJ's characterization of her

6    testimony fails to convey the limited nature of her activities. She further argues that evidence of a

7    limited range of activities does not demonstrate an ability to engage in full time work on a

8    sustained basis. ECF No. 17 at 19; *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1980)

9    ("[M]any home activities are not easily transferable to what may be the more grueling

10   environment of the workplace, where it might be impossible to periodically rest or take

11   medication."). Plaintiff's argument mischaracterizes the reason given by the ALJ for discrediting

12   her statements. The ALJ did not find that her reported activities are inconsistent with disability.

13   Instead, he specifically found that plaintiff made inconsistent statements regarding her activities.

14   An ALJ may rely on inconsistent statements in making an adverse credibility determination.

15   *Smolen*, 80 F.3d at 1284.

16         The ALJ specifically observed that while plaintiff "wrote that she stays in bed most days

17   and can do practically nothing, she testified that she does some housework including cooking and

18   laundry, and drives occasionally. She goes to dinner and drives to the library with her

19   granddaughter." AR 51. In a Disability and Function report, plaintiff stated "I don't go no where

20   and I mean no where." AR 171. She also reported that she does not do her own grocery

21   shopping, and that she no longer drives a car. *Id*. at 172. In contrast, at the hearing she testified

22   that she goes grocery shopping with her granddaughter, drives three blocks to the library, and

23   goes out to dinner with her husband. *Id*. at 19, 23. Given the inconsistencies in plaintiff's

24   statements, the ALJ properly found that she was not fully credible as to her limitations.

25   /////

26   _____

27        [2] While plaintiff specifically argues that a lack of medical evidence cannot be the sole
     basis for an adverse credibility finding, she does specifically dispute the ALJ's finding that the
     extent of her subjective complaints are supported by the medical findings of record. *See* ECF No.
28   17 at 17-20.

1  IV.    <u>CONCLUSION</u>

2         The ALJ applied the proper legal standard and his decision was supported by substantial

3  evidence.  Therefore, it is hereby ORDERED that:

4         1.  Plaintiff's motion for summary judgment is denied;

5         2.  The Commissioner's cross-motion for summary judgment is granted; and

6         3.  The Clerk is directed to enter judgment in the Commissioner's favor.

7  DATED:  September 29, 2014.

8

9                                          EDMUND F. BRENNAN
                                           UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28